```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
JOHNNY ALBERTO TAVAREZ,                  x
                                         x   96 Cr. 895 (SWK);
                                         x   03 Civ. 7610 (SWK)
                    Petitioner,          x
                                         x        OPINION
                                         x
              -against-                  x
                                         x
                                         x
UNITED STATES OF AMERICA,                x
                                         x
                                         x
                    Respondent.          x
----------------------------------------X
```

**SHIRLEY WOHL KRAM, U.S.D.J.**

## I.  INTRODUCTION

Johnny Alberto Tavarez ("Defendant/Petitioner") pled guilty to conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846.  The facts and procedural history leading to his incarceration have been previously recited and are not in serious dispute.  Petitioner now moves to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255.

Tavarez challenges his sentence on two primary grounds. First, he asserts that the Court erroneously admitted evidence by relying on false testimony.  Second, Tavarez claims he received ineffective assistance of counsel at trial and on

appeal. For the reasons set forth below, Petitioner's motion is denied.

## II. APPLICABLE LEGAL STANDARDS

As a pro se litigant, Petitioner's submissions will be liberally construed in his favor and read to raise the strongest arguments that they suggest. Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). However, to vacate a conviction under § 2255, a defendant still must demonstrate a "constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996)(quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)). Such collateral attacks are sharply restricted because of "settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." United States v. Addonizio, 442 U.S. 178, 184 (1979).

Accordingly, a § 2255 petitioner may not relitigate claims already raised and considered on direct appeal. See United States v. Sanin, 252 F.3d 79, 83 (2d Cir.)(per curiam), cert. denied, 534 U.S. 1008 (2001). Such successive claims are procedurally barred and cannot be revisited unless there has

been "an intervening change in the law that would have exonerated the petitioner had it been in force before the conviction was affirmed on direct appeal." Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980), cert. denied, 450 U.S. 923 (1981).

When a § 2255 petitioner asserts a cause of action that was not raised on direct review, the new claim will be considered procedurally defaulted and ineligible for review unless the petitioner "can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998). Establishing 'cause' "ordinarily turns on whether the prisoner can show that some objective factor external to the defense" prevented counsel from raising the claim. Coleman v. Thompson, 501 U.S. 722, 753 (1991). For example, courts have recognized 'cause' when the factual or legal basis for a claim was not available or when procedural compliance was impracticable due to interference by officials. See Murray v. Carrier, 477 U.S. 478, 488 (1986). To satisfy the 'prejudice' requirement, a defendant must establish that the defect "worked to his substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Rodriguez v. Mitchell, 252 F.3d 191, 203 (2d Cir. 2001). Finally, demonstrations of 'actual innocence' require a

showing that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousely, 523 U.S. at 623.

Ineffective assistance of counsel claims, by contrast, may be raised for the first time on collateral review and need not be raised on appeal. See Massaro v. United States, 538 U.S. 500, 504 (2003). Such claims still must overcome the strong presumption in favor of competency imposed by Strickland v. Washington, 466 U.S. 668 (1984). To prevail, a petitioner must establish that counsel's errors "fell below an objective standard of reasonableness," Id. at 688, and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. This two-prong test is also employed to evaluate post-conviction attacks on appellate representation. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir. 1990).

## III. DISCUSSION

### A. Suppression Hearing Testimony

Tavarez claims that New York Police Department ("NYPD") Officer Kevin Grogan ("Officer Grogan") gave false testimony during a suppression hearing that led to the erroneous admission of incriminating evidence. Officer Grogan testified that he

-4-

received Tavarez's license plate number through a confidential informant and used that information to reference Tavarez's name. Defendant argues that the introduction of evidence based on Officer Grogan's false testimony left him with no choice but to plead guilty. Nevertheless, Tavarez neglected to pursue this claim on direct review, rendering it procedurally defaulted.

Moreover, Petitioner cannot satisfy the 'prejudice' requirement to overcome this procedural default. See Rodriguez, 252 F.3d at 203. Any perceived inaccuracies in Officer Grogan's testimony were insignificant and did not infect Petitioner's suppression hearing with constitutional errors. The Presentence Investigation Report ("PSR") clearly establishes that the search warrant was supported by information given by two confidential informants who provided specific information describing the trafficking activities at Tavarez's apartment. See PSR at 2-3. Officer Grogan's testimony regarding Tavarez's license plate was not central to the question of the validity of the search warrant and cannot excuse Petitioner's original procedural default.[1]

---

[1] Tavarez claims that "no vehicle and/or license plate number with Petitioner's name was registered with the Department of Motor Vehicles." Pet. at 4-5. However, Petitioner's own Exhibit B undermines this position by providing evidence that there was a license plate number assigned to a 'Johnny A. Tavarez.'

Similarly, Defendant did not address his concerns about the availability of records from state court through direct review. Tavarez argues that stenographic transcripts of Officer Grogan's testimony in support of a search warrant were intentionally withheld from him. But the availability of these transcripts was inconsequential to the Court's decision to admit evidence seized at the apartment. In his suppression motion, Defendant challenged the NYPD's methods of executing the search warrant and refrained from attacking its underlying validity. <u>See</u> <u>United States v. Tavarez</u>, 995 F.Supp. 443 (1998). The transcripts were of negligible importance and their alleged absence does not constitute the type of prejudice necessary to resuscitate a defaulted claim for § 2255 relief.

## B.    Effective Assistance of Counsel at Trial

Petitioner asserts that his attorney's cross-examination tactics at a suppression hearing violated his Sixth Amendment right to effective assistance. Specifically, he objects to his attorney's decision to refrain from impeaching Officer Grogan's account that he had never been to Tavarez's apartment before he applied for a search warrant on March 14, 1995. Though this testimony could have been rebutted by ¶20 of the sealed affidavit of FBI Agent David Higgins ("Agent Higgins") in support of a search warrant, <u>See</u> Pet. Ex. G at 9-10, Tavarez

cannot demonstrate that this strategic decision was erroneous as a matter of law. Courts must defer from second-guessing the impeachment tactics of attorneys, "unless there is no strategic or tactical justification for the course taken." <u>United States v. Luciano</u>, 158 F.3d 655, 660 (2d Cir. 1998)(per curiam); <u>see also</u> <u>United States v. Eisen</u>, 974 F.2d 246, 265 (2d Cir. 1992).

By this standard, the decision to refrain from impeaching Officer Grogan on cross-examination with this minor discrepancy was rational and did not violate Petitioner's Sixth Amendment rights. Officer Grogan's recollection of his pre-raid survey nearly three years earlier was not a disputed legal issue at the suppression hearing and had no effect on the Court's decision to admit the evidence seized at Tavarez's apartment. Petitioner moved to suppress this evidence on the grounds that the NYPD made an unannounced entry at his apartment and that the search was conducted in a violent manner. <u>See</u> <u>United States v. Tavarez</u>, 995 F.Supp. 443 (S.D.N.Y. 1998). Therefore, impeaching Officer Grogan's testimony about his pre-arrest survey of the property would have been an irrelevant detour during cross-examination.

Defendant takes similar issue with the testimony of Agent Higgins. He asserts that his attorney did not aggressively portray Agent Higgins as central to the search of his apartment

during cross-examination. This account, however, ignores the repeated clarifications of Agent Higgins on the stand that he was present at the scene of the raid exclusively to provide security and was not involved in the actual search of the contents of the apartment. See Pet. Ex. I. at 85-86. Petitioner's counsel was not ineffective for neglecting to pursue this issue and any additional cross-examination would have proven unproductive.

Tavarez further attempts to misrepresent the NYPD search of his apartment to create a violation of Federal Rule of Criminal Procedure 41 out of whole cloth. He claims that "Higgins and Grogan acted in bad faith to use the state procedures to evade the provision of Rule 41 to effectuate an illegal search." Pet. at 19. Without delineating how Rule 41 would have been violated, Petitioner claims his representation was ineffective for neglecting to raise a challenge on this basis. However, the search of the contents of the apartment was done exclusively by NYPD personnel in accordance with a state search warrant. Therefore, Tavarez may not collaterally attack his sentence by falsely recharacterizing the search as federal in nature.[2]

---

[2] Nor may Tavarez recast the state search of his apartment to attack his representation for not employing 18 U.S.C. § 3109 in his defense.

Next, Petitioner claims his attorney neglected to challenge the probation department's sentencing calculations in District Court. This argument has no basis in law or fact. On March 23, 1999, Defendant's attorney Ivan Fisher submitted a seven page letter to the Court, listing extensive objections to the PSR issued by Probation Officer Johnny Kim. That letter addressed the exact issues that Tavarez now claims were overlooked. In response, the Court determined that Tavarez was not a candidate for "acceptance of responsibility" deductions to his base offense level because he had obstructed justice and committed perjury on several occasions. See United States v. Tavarez, 151 F. Supp. 2d 274, 279 (S.D.N.Y. 2001). Consequently, Tavarez's claim is rejected because it relies on facts that are not supported by the record.

Petitioner also argues that his attorney, Ramon Pagan, committed "fraud upon the court" by signing an affidavit on behalf of his client.[3] He claims that it was this unprofessional practice that undermined his credibility before the Court. However, the Court's assessment of Tavarez's propensity for truthfulness was never based on his method of affirming this, or any, affidavit. Instead, the Court's finding that Petitioner's

---

[3] Petitioner's own Exhibit S states that Pagan's use of his initials to sign for his client followed "accepted business practices."

testimony was "devoid of credibility" and appeared "simply incredible on its face" was based on Tavarez's repeated insistence to commit perjury on the stand. See United States v. Tavarez, 995 F.Supp. 443, 450 (S.D.N.Y. March 9, 1998). The Court was justified in its suspicion of Tavarez's testimony and the practices of his attorney were irrelevant to this determination.

## C.     Effective Assistance on Appeal

An appellate advocate is not required to advance every nonfrivolous argument that can be made. See Jones v. Barnes, 463 U.S. 745, 754 (1983). Tavarez nonetheless makes a series of claims alleging ineffective assistance at the appellate level. For each these charges, Petitioner cannot establish that he received objectively unreasonable assistance or that he suffered any prejudice.

First, Tavarez contends that his guilty plea was not 'knowing and intelligent' for the purposes of Federal Rule of Criminal Procedure 11 and that his assistance was ineffective for failing to raise this issue on appeal. In particular, Tavarez claims he was not informed that drug type and quantity were elements of his offense to be proven beyond a reasonable doubt. However, the Court made certain that the plea was 'knowing and intelligent' for the purposes of Rule 11 through an

extensive colloquy followed by a recess for Tavarez to discuss the consequences of the indictment with his attorney. The Court took the extra step of reading the entire indictment to Tavarez aloud and informed him that he faced the possibility of life imprisonment as the maximum statutory penalty for pleading to 21 U.S.C. 841(b)(1)(A). See Plea Tr. at 16. Therefore, Tavarez's claim is meritless and his lawyer was not unreasonable for failing to raise such an untenable claim on appeal.[4]

Petitioner further criticizes his appellate representation for not objecting to the use of hearsay evidence in the Court's determination of his base level calculation. Citing United States v. Darwich, 337 F.3d 645 (6th Cir. 2003), he asserts that the Court improperly relied on hearsay evidence in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000). However, the Rules of Evidence only apply when the issue of drug quantity triggers a higher statutory maximum and must be proven to a jury beyond a reasonable doubt. See Id. at 490. After pleading guilty, Defendant received a sentence of 240 months incarceration, noticeably less than the maximum penalty of life imprisonment.

---

[4] This Court has previously held that Tavarez's plea was 'knowing and intelligent' for the purposes of Rule 11. See United States v. Tavarez, 2000 U.S. Dist. LEXIS 10169 at *5. The Second Circuit also added that "Tavarez's additional contention that the indictment should have been dismissed because it failed to inform him of the nature of the alleged conspiracy…is frivolous." See United States v. Tavarez, 2002 U.S. App. LEXIS 11397 at *7.

See 21 U.S.C. § 841(b)(1)(A) ("such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life"). Tavarez's sentence did not require any further demonstrations to a jury that would implicate the Rules of Evidence, foreclosing an ineffective assistance claim on this basis.

Tavarez makes the additional claim that his due process rights were violated because the Court used false and misleading evidence during sentencing that exaggerated the calculation of his base offense level. Though Petitioner concedes that hearsay evidence is admissible during Fatico hearings, See Fed. R. Evid. 1101(d)(3), he argues that the testimony of Agent Higgins did not bear "sufficient indicia of reliability to support its probable accuracy" as required by U.S.S.G. § 6A1.3. While some due process considerations are implicated during sentencing, not all evidentiary limitations and procedural safeguards are required in the conduct of a sentencing proceeding. United States v. Fatico, 579 F.2d 707, 711 (2d Cir. 1978). The testimony of Agent Higgins was corroborated by the statements of two cooperating witnesses who affirmed that Tavarez had conspired to sell 85 kilograms of cocaine. See PSR at 2-3. Therefore, the evidence upon which the Court based its decision

was sufficiently reliable and Tavarez's attorney was not ineffective for failing to pursue this allegation.[5]

Similarly, the Defendant asserts that there was insufficient evidence to make enhancements to his base offense level for using a firearm in the commission of the offense or for his role as manager of the conspiracy. However, the PSR explicitly described the arsenal of loaded firearms recovered at his residence and accurately noted Tavarez's role as manager in the enterprise. See PSR at 2-3. Thus, the prudent action of Tavarez's attorney to refrain from making baseless attacks on the PSR cannot be considered objectively unreasonable.

Finally, Petitioner attacks his representation on appeal for failing to make a Rule 32 challenge to his sentence. He

---

[5] Defendant cites to, inter alia, United States v. Tucker, 404 U.S. 433, 447 (1972), Custis v. United States, 511 U.S. 485 (1994) and United States v. McDavid, 41 F.3d 841, 844 (2d Cir. 1994) for the proposition that "a defendant has a due process right not to be sentenced on false or misleading evidence." Pet. at 42. These cases, however, present examples of due process deprivation that are not analogous to Petitioner's § 2255 claim. In McDavid, the District Court relied on the mistaken belief that a defendant was on probation when he committed fraud. Tucker addressed a situation in which a defendant's previous convictions were found to be unconstitutional. Finally, in Nichols, a defendant's PSR included zero data or evidence to support the conclusion that he was responsible for distributing 50 kilograms of cocaine. In these circumstances, the Court either relied upon objectively verifiable factual mistakes, legally unsound convictions, or constitutionally inadequate PSRs, respectively. Petitioner cannot demonstrate that the evidence that the Court relied upon during his sentencing approached--or can even be compared--to the reversible mistakes found in these cases.

-13-

contends that the Court neglected to make a finding during sentencing on the issue of drug quantity, as required by Rule 32(c)(1).[6] However, the Court complied with the demands of Rule 32 by orally adopting the PSR's factual determinations regarding drug quantity on the record. Directly before sentencing Tavarez, the Government specifically asked "that the Court make its finding as to the basis for the enhancement on weight and role, relying on the statements of the cooperating witnesses, setting aside Tavarez's own proffer statements." Sentence Tr. at 9. Thereafter, the Court explicitly made its finding on the issue of drug quantity, foreclosing Petitioner's ineffective assistance claim. See Id. at 10.

**D. Evidentiary Hearing Unnecessary**

A District Court shall hold an evidentiary hearing for a petitioner "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The Court may rely on its own familiarity with the case to deny a motion without a hearing if the court is convinced that the motion "lacks any truly meritorious evidence." United States v. Aiello, 900 F.2d 528, 534 (2d Cir. 1990). As it is clear from the record that Tavarez

---

[6] Though Petitioner cites to Rule 32(2)(3)(D)[sic], the Court will interpret this as a challenge based on Rule 32(c)(3)(D), amended and replaced in 1994 by Rule 32(c)(1).

is not entitled to relief, a hearing is not necessary to decide the motion.

## III. CONCLUSION

For the reasons set forth above, Tavarez's 28 U.S.C. § 2255 motion is hereby denied.

SO ORDERED.

_____
SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:     New York, New York
           May 7, 2005